CHICAGO—FIRST DISTRICT—APRIL, 1924.    109

Grand Trunk West. Ry. Co. v. Hales & Hunter Co., 233 Ill. App. 109.

## Grand Trunk Western Railway Company, Appellee, v. Hales & Hunter Company, Appellant.

### Gen. No. 28,362.

1. CARRIERS—*reasonableness of freight embargo causing demurrage claim.* In an action by plaintiff railroad company to recover demurrage charges on a shipment of wheat for the period the wheat was necessarily held in transit because of a limited embargo placed on such shipments to seaboard during the world war, held, that the evidence submitted by plaintiff was sufficient to show that the embargo was justifiable and its terms reasonable and proper.

2. CARRIERS—*questions of embargo for Interstate Commerce Commission.* The reasonableness of an embargo on shipments of freight over the railroads is a matter for the determination of the Interstate Commerce Commission in the first instance.

3. MUNICIPAL COURTS—*admission of statement of claim by want of specific denials.* In an action by a railroad company to recover demurrage charges for the time a shipment of grain was held for proper billing instructions due to an embargo on such shipments, where plaintiff in its statement of claim alleged that the cars had been held for proper billing instructions for the period for which it was suing for demurrage, and, by its affidavit of merits, defendant admitted that the charges demanded were "for use and occupation of said cars during the time plaintiff held cars on tracks," nor did it deny that the plaintiff had held the cars "for proper billing instructions" nor make any allegation that, for a part of the time at least for which plaintiff claims demurrage the cars were not being held but were being moved toward destination, the defendant must, under rules 15 and 20 of the municipal court of Chicago, be taken to have admitted the fact to be as alleged in the statement of claim.

Appeal by defendant from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923. Affirmed. Opinion filed April 30, 1924.

JEFFERY, CAMPBELL & CLARK, for appellant; CHARLES V. CLARK and STEPHEN A. CROSS, of counsel.

KRETZINGER, KRETZINGER & SMITH, for appellee;

110    APPELLATE COURTS OF ILLINOIS.

Grand Trunk West. Ry. Co. v. Hales & Hunter Co., 233 Ill. App. 109.

GEORGE W. KRETZINGER, JR. and LOYAL L. SMITH, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

The plaintiff railroad company brought this action against the defendant, Hales & Hunter Company, to recover demurrage which was claimed to be due on 112 cars of wheat, shipped over its road by the defendant, late in December, 1916. The trial of the issues, in the municipal court of Chicago, resulted in the recovery of a judgment by the plaintiff in the sum of $2,302, to reverse which the defendant has perfected this appeal.

The plaintiff's line of railroad extends from Chicago to Port Huron, in the State of Michigan, where it connects with the Grand Trunk Railway of Canada, in connection with which, it operates a through line to Portland, Maine. Through this and other connections, the plaintiff also operates a through line to New York.

At the time of the shipments involved in this case, the Canadian Grand Trunk had placed a limited embargo against shipments of grain to Portland, and, in turn, the plaintiff had placed a similar embargo against such shipments. Under the terms of that limited embargo, grain shipments could only be made, where steamship space had been engaged in advance, so that the grain would be assured ocean shipment when it arrived at the seaboard. The embargo order provided that when steamship space had been so engaged, the steamship company should notify the proper agent of the Canadian Grand Trunk, or of the plaintiff, to that effect, whereupon, the latter would issue a permit to the shipper, and the latter was required to note the number of his permit on the shipping instructions delivered to the carrier. The defendant knew of the embargo which had been placed against shipments for Portland, and all of its terms.

Grand Trunk West. Ry. Co. v. Hales & Hunter Co., 233 Ill. App. 109.

In December, 1916, the defendant loaded 112 cars with wheat, at its elevator, located on a switching line in the Chicago district, and by that line, delivered the cars to the plaintiff railroad, furnishing therewith complete billing and shipping instructions, showing the destination of the cars as Portland, Maine, and including a permit number purporting to cover all the cars.   The plaintiff then issued appropriate bills of lading.   The fact was that the permit, which had been issued corresponding to the number shown on the defendant's shipping instructions covering these 112 cars of wheat, had previously been exhausted and was no longer available for use.   There is nothing in the record to show that the use which the defendant thus made of this permit number, in connection with this shipment, was with knowledge that it was void, and deliberate, nor is there anything to show that it was inadvertent.

Very soon after the plaintiff had issued its bills of lading on the 112 cars referred to, it discovered that the number shown on the shipping instructions referred to a permit which had been exhausted, and it immediately demanded that the bills of lading which it had issued, be returned.   The plaintiff refused to issue further bills of lading on these cars until the defendant had obtained a proper permit under its existing embargo order.   About a week after the cars had been turned over to the plaintiff railroad, from the switching line, a permit for the shipment of these cars to New York was issued and the cars then went forward under appropriate shipping instructions showing the new permit number, and corresponding bills of lading.

It appears from the testimony in the record that after the plaintiff received the cars, and pending the issuance of a new permit and the submitting of suitable billing and shipping instructions, and the issuance of new bills of lading, the cars were not held by the plaintiff railroad at the point where it had re-

ceived them from the switching line, but that they were moved forward toward destination, to the nearest points where storage space was available, to which they were sent for storage purposes until they could be billed out.

The plaintiff brought this action to recover the demurrage charged on this shipment of 112 cars of wheat from the time they were received from the switching line, until the bills of lading on which the cars were moved to New York, were issued.

It is argued by the defendant that under the law, common carriers are bound to receive and transport goods offered to them for that purpose and while it is not contended that carriers may not declare an embargo where the facts and conditions present are such as to justify such a course, it is urged that where a carrier has declined or failed to transport goods turned over to it for transportation and attempts to justify such a course by showing that an embargo against such transportation was in effect, and where, as in the case at bar, the carrier is the plaintiff and is seeking to recover demurrage on the shipments involved, for the period of the delay, incident to the matter of a compliance by the shipper with the terms of the embargo, the burden is on such carrier, to prove by proper evidence, that the embargo was a valid and justifiable one, and the contention of the defendant further is that the plaintiff did not make out such a showing by the evidence submitted.

At the end of 1916, when the shipment in question was made, and the beginning of 1917, there had been a very great loss in Trans-Atlantic shipping, due to the submarine campaign, incident to the World War, resulting in much congestion at all ports of export along the Atlantic seaboard in the United States. One witness for the plaintiff testified that these war conditions made an embargo of the character of the one involved in this case, ''absolutely necessary.'' No objection was interposed to that testimony. Another

witness testified, without objection, to the fact that the reason for the placing of the embargo in question, was the war situation and the congestion which was caused at Portland due to the arrival of grain shipments at that port for export, for which no ships were available. He testified further that this shortage of ships was due to the many sinkings accomplished by German submarines and that there were such accumulations of grain at the seaboard that an embargo was necessary in order to enable the carriers to function properly and to keep goods in transit, moving, instead of choking up the terminals. Testimony submitted by the plaintiff further was to the effect that this was particularly the situation with reference to shipments of grain, all of which had to pass through elevators in being transferred from the cars to the ships. That the terms of the embargo involved here, were reasonable, seems clear, for it was shown by the evidence that a shipment would at once go forward, when a permit was provided, and that a permit could always be had when the proper agent of the plaintiff's connecting railroad was notified by a steamship agent that shipping space was available and had been engaged for a given shipment and when he was given the approximate date of the arrival of the ship at the port to which the shipment was consigned.

There is a further fact shown by the record bearing on this question. The lines of the plaintiff railroad did not extend further east than the City of Port Huron, where they connected with the Grand Trunk Railroad Company of Canada, the lines of which extended to the seaboard. The testimony of the plaintiff was to the effect that it, as distinguished from the Canadian Company, made no independent investigations of conditions at the seaboard, before issuing its embargo, but relied on the embargo issued by the Canadian Company as sufficient grounds for itself issuing an embargo. It is difficult to see how it could do otherwise. In our opinion, the evidence submitted

114    APPELLATE COURTS OF ILLINOIS.

Grand Trunk West. Ry. Co. v. Hales & Hunter Co., 233 Ill. App. 109.

by the plaintiff was sufficient to show that the embargo was justifiable and that its terms were reasonable and proper. No evidence to the contrary was offered by the defendant. Moreover, as to the reasonableness of this embargo, it should be said that, inasmuch as it involves a regulation or condition of transportation, its reasonableness is a matter for the determination of the Interstate Commerce Commission, in the first instance. *Morrisdale Coal Co. v. Pennsylvania R. Co.*, 230 U. S. 304; *United States v. Metropolitan Lumber Co.*, 254 Fed. 348. In *Baltimore Chamber of Commerce v. Baltimore & Ohio R. R. Co.*, 45 I. C. C. R. 40, it was held in effect, that an embargo, calling for the issuing of permits in the case of all shipments where cargo space was assured, and involving a checking and supervision of the issuance of permits, to the end that export grain would be kept moving through the port affected by the embargo, was reasonable.

It is the further contention of the defendant, that the demurrage tariff set forth in plaintiff's statement of claim provides for demurrage charges while the cars are being "held" by the carrier line; that admittedly the cars in question were not held at the point where they were turned over to the plaintiff carrier but that they were moved toward destination; and that whether that was a transportation movement or one merely for the purpose of finding storage space, it being a movement toward destination, the carrier should not be permitted to collect a penalty in the form of demurrage for holding the cars, pending the procuring of a permit, and at the same time collect tariff charges for a movement of the cars toward destination, during the very time they were being "held" as now claimed by the defendant. In this connection, the defendant points out that it appears from the testimony of one of plaintiff's witnesses, that it had records available showing to what points these cars were sent and held, pending the issu-

ance of the permit on this shipment by the plaintiff. It is argued that until this appears it cannot be determined how much of the time involved in the plaintiff's claim for demurrage was consumed in transportation of these cars and how much was really consumed in holding the cars on sidetracks or in yards.

In our opinion, the pleadings, as disclosed by the record, are such as to preclude the defendant from making such a contention. In its statement of claim, the plaintiff alleged that the cars of grain in question, had been "held" by plaintiff for proper billing instructions, for the period for which it was suing for demurrage. By the affidavit of merits which it filed, the defendant admitted "that the charges demanded are for use and occupation of said cars during the time plaintiff held cars on tracks.  *  *  *" Nowhere in its affidavit of merits, did the defendant deny that the plaintiff had held the cars "for proper billing instructions," nor did it make any contrary allegation, such as is now advanced, to the effect that for at least a part of the time for which plaintiff claims demurrage, the cars were not being "held" but were being moved toward destination and that for such time, demurrage could not be claimed. By rules 15 and 20 of the municipal court of Chicago, which were introduced in evidence, it is provided that every allegation of fact in any pleading, except as to unliquidated damages, shall be taken as admitted, unless denied specifically or by necessary implication in the pleading of the opposite party—except that, in all cases, except where a party is in default, new matter alleged in the pleading last filed, in the line of pleading, shall be deemed denied by the opposite party, and shall form an issue for trial, unless otherwise ordered by the court. Such being the rule of pleading in the municipal court, and the pleading of the parties on the issue of fact as to whether the cars in question had been "held" by the plaintiff, as claimed by it, being as above pointed out, we are of the opin-

ion that the defendant must be taken to have admitted the fact to be as alleged by the plaintiff in its statement of claim.

When it appeared from the testimony of one of the witnesses, that plaintiff had records of the movement of these cars, from which it could be determined how far they were moved, within the time for which demurrage was being demanded, and that the records were not in court, no motion for a recess or continuance was made so that the records could be brought in, nor was any move made to amend the pleadings.

For the reasons given, the judgment appealed from is affirmed.

*Judgment affirmed.*

TAYLOR, P. J. and O'CONNOR, J. concur.