### MISSOURI PAC. RY. CO. v. UNION STOCKYARDS CO.

### UNION STOCKYARDS CO. v. MISSOURI PAC. RY. CO.

#### (Circuit Court of Appeals, Eighth Circuit.   April 21, 1913.)

#### Nos. 3,834, 3,835.

CARRIERS (§ 100*)—TERMINAL CARRIER—DEMURRAGE.

    Plaintiff's demurrage rules provided that cars held for or by consignors or consignees for loading, unloading, forwarding directions, or for any other purpose are subject to the rules, and that when cars are interchanged with minor railroads or industrial plants performing their own switching services, handling cars for themselves or for others, an allowance of 24 hours will be made for switching, in addition to the regular time for loading and unloading, and if returned loaded an additional 48 hours will be allowed. *Held* that, where a stockyards company operated a terminal railroad, switching cars from plaintiff and other connecting carriers consigned to itself for its own use, and to other industrial plants reached by switches from its terminal road, it was liable for demurrage on cars consigned to it, but not on cars delivered to it as a connecting carrier for transportation to consignees.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–433; Dec. Dig. § 100.*

    Quick dispatch, demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 342.]

In Error to the District Court of the United States for the District of Nebraska; William H. Munger, Judge.

Action by the Missouri Pacific Railway Company against the Union Stockyards Company. From a judgment for plaintiff for part of the relief demanded, it brings error, and defendant prosecutes a cross-error. Affirmed.

Edgar M. Morsman, Jr., of Omaha, Neb., for plaintiff in error.
Frank T. Ransom, of Omaha, Neb., for defendant in error.

Before HOOK and SMITH, Circuit Judges, and VAN VALKEN-BURGH, District Judge.

HOOK, Circuit Judge. This was an action by the Missouri Pacific Railway Company to recover of the Union Stockyards Company of Omaha demurrage charges claimed under rules and regulations in tariffs filed with the Interstate Commerce Commission. The trial court directed a verdict for the plaintiff as to part of the items, and

denied a recovery as to the balance. Each party prosecuted a writ of error.

The defendant owns and operates the stockyards at South Omaha, Neb., and in connection therewith about 35 miles of railroad track constituting a terminal railroad. Its stockyards were located upon its tracks, and also various packing houses and other industrial plants belonging to other parties. These tracks were the means of connecting the large railroad systems entering South Omaha, including that of the plaintiff, with the industrial concerns. Defendant did not engage in the ordinary carrying business of a railroad company, but merely performed a switching service with a number of switch engines which it owned. On the inbound shipments with which we are concerned it took the cars at the transfer or interchange tracks, where the railroad companies delivered them, and hauled them over its own rails to the unloading docks of the consignees. The plaintiff's claims for demurrage were of two classes: (1) On cars consigned to defendant; (2) on cars consigned to the other industrial concerns located on its tracks. The defendant complains of the allowance of the former, and the plaintiff of the denial of the latter.

No substantial reason is offered why the defendant is not responsible for demurrage on the cars consigned to it and held beyond the free time allowed. It was an ordinary consignee of cars containing for the most part feed and materials for the upkeep of its stockyards. It was not a railroad company within the meaning of the exceptions in the rules and regulations imposing the charges. It is urged that a discrimination would result, because other consignees were not charged; but no purpose to discriminate appears in the tariff, which on its face applies to all affected by like circumstances and conditions. The real controversy is as to the liability of defendant for demurrage on the cars consigned to the other industries on its tracks. The demurrage rules and regulations in the tariff, so far as they need be quoted, were as follows:

"Cars held for or by consignors or consignees for loading, unloading, forwarding directions, or for any other purpose are subject to these demurrage rules," with some exceptions not material here. "When cars are interchanged with minor railroads or industrial plants performing their own switching services, handling cars for themselves or other parties, an allowance of 24 hours will be made for switching in addition to the regular time allowed for loading or unloading. If returned loaded, an additional 48 hours' free time will be allowed."

These and the other rules and regulations define the free time allowed, when demurrage shall begin, and to what cars it shall attach; but they do not say in definite terms that any person other than a consignor or consignee shall be personally liable. If a railroad company desires to impose upon the owner of an instrumentality which it employs for the delivery of traffic to its consignees a schedule of fixed charges or penalties for delay, it should express itself definitely and clearly beforehand, so that the person to be affected may shape his course accordingly. There is nothing in the rules and regluations before us which fairly indicate a purpose to charge the switching company, instead of the consignees, and the circumstances of the case make an implication to that effect quite inadmissible. The

defendant was neither consignor nor consignee of the cars in question, nor was it interested in their contents. It did not load or unload them, or make any use of them for its own purposes. It was not its duty to notify the consignees of the arrival of the cars on the transfer tracks; that was done by the plaintiff. Defendant had no contractual relation with, and did not receive its compensation from, the consignees. It acted as the agent of the plaintiff, not of the consignees, and performed its services for a switching charge, which plaintiff paid. The unloading docks of the industrial plants were the destinations of the cars, and the cost of switching to those points was embraced in the freight charges, which were collected by the plaintiff or its connecting carriers. When the cars were placed by plaintiff on the transfer tracks for switching to the docks of the consignees, they were necessarily held until the consignees were ready and willing to receive them; nor could they be taken for return until the consignees had unloaded them. No other course was practicable. There was no proof that the delay beyond the free time in delivering the cars to the consignees and in returning them to the plaintiff at the place of interchange was the fault of the defendant. On the contrary, the testimony on that subject was that the defendant acted promptly and diligently. The imposition of demurrage implies delay through negligence or inattention, or a retention for personal uses, whereby the proper office of the cars in transportation is impaired.

The judgment is affirmed.