## MORRISDALE COAL COMPANY v. PENNSYL-VANIA RAILROAD COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 207. Argued April 15, 1913.—Decided June 9, 1913.

Without preliminary action by the Interstate Commerce Commission declaring that the carrier had, by the rule adopted in regard to distribution of cars, discriminated against a shipper in such distribution, the Federal courts have no jurisdiction of a suit by such shipper for damages alleged to be occasioned by undue discrimination against him and undue preference in favor of his competitor.

The question as to the reasonableness of a rule of car distribution is administrative in its character and calls for the exercise of the powers and discretion conferred by Congress upon the Interstate Commerce Commission.

Where the alleged discriminations in distribution of cars occurred more than two years before its commencement, the action cannot be stayed to permit an application to the Interstate Commerce Commission as, under the act of June 29, 1906, all of such claims are barred after two years. *Southern Railway* v. *Tift*, 206 U. S. 434.

THE facts are stated in the opinion.

*Mr. William A. Glasgow, Jr.*, with whom *Mr. Chester N. Farr, Jr.*, was on the brief, for appellant:

This action was brought in the Circuit Court of the United States under § 9 of the Act to Regulate Commerce to recover damages by reason of a violation by the carrier of § 3 of that act.

Under § 9 of the act, the person damaged may proceed by "complaint to the Commission," or "may bring suit . . . for the recovery of the damages for which such common carrier may be liable under the provisions of this act in any District or Circuit Court of the United States of competent jurisdiction."

For violation of § 3, § 8 gives the party aggrieved the

right to recover in the forums provided by § 9, "the full amount of damages sustained in consequence of any such violation of the provisions of this act."

The complaint was that the defendant, during the period from 1902 to January 1, 1906, promulgated certain rules providing a *pro rata* coal car distribution when it was unable to furnish all the cars which shippers needed, and that during such period the defendant unjustly discriminated against plaintiff by: (a) violating such rules, or (b) establishing and carrying out rules which unjustly discriminated against plaintiff. On January 1, 1906, the defendant canceled the rules theretofore in effect, and established rules which were not thereafter complained of, and the purpose of the action was to recover damages for past violation of § 3 of the act. There was a verdict for the plaintiff, and upon a question of law reserved, the court held that the proceedings should in the first instance have been by complaint to the Interstate Commerce Commission, under the case of *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, and thereupon entered judgment for defendant. This judgment was affirmed by the Circuit Court of Appeals, and the judgment of that court is here for review.

The plaintiff is entitled to the right of action in the Circuit Court given by § 9 of the act, unless the exercise thereof would "deprive the subsequent statute of its efficiency; in other words, render its provisions nugatory." *Abilene Cotton Oil Co. Case*, 204 U. S. 437.

The complaint is only required to be made to the Commission in the first instance when "there is involved a question of administrative discretion." *L. & N. R. R. Co.* v. *Cook Brewing Co.*, 223 U. S. 70.

And where there is involved "a question of administrative discretion," there must necessarily be a complaint to the Commission in the first instance, for in such case the finding of fact by the Commission, when the proceed-

ing is according to law, is conclusive and beyond the competency of any court to reëxamine. *I. C. C.* v. *Union Pacific R. R. Co.*, 222 U. S. 541, at page 550; *I. C. C.* v. *D., L. & W. R. R. Co.*, 220 U. S. 235, at page 255.

A question of "administrative discretion" can only arise upon and be "involved" in the consideration of a present or future action or course of conduct. It cannot arise in a judicial or quasi judicial determination of whether a past course of conduct either (a) violated certain rules, or (b) created unjust discrimination. The reason for requiring a complaint to the Commission in the first instance when a question of "administrative discretion" is involved is clear, because the finding of fact thereon by the Commission is "conclusive," and no court is competent "to reëxamine" such finding.

The present case, however, is an action brought in 1908 for damages accruing prior to January 1, 1906, and for a cause which did not exist after that date. It involved no question of "administrative discretion," but a judicial determination of whether the carrier during a period in the past (a) violated its rule, or (b) whether such rules in the past discriminated against plaintiff.

In this case, if there had been complaint to the Commission in the first instance, and it had found the fact of violation of the rules or discrimination, and ordered the payment of the damages to which plaintiff was entitled, such finding and order would have to be enforced by an action at law in the Circuit Court and trial by jury, upon the same issues passed upon by the Commission, in which action the finding of the Commission and its order would only be "*prima facie* evidence of the facts therein stated." See Act to Regulate Commerce, § 16.

It is perfectly reasonable, therefore, to hold that in a case where the finding of fact by the Commission is conclusive under the act, that resort must be had in the first instance to the Commission and then to the courts. It

is equally as unreasonable to hold that when, under § 9, a party may proceed for the recovery of damages for past grievances, either by complaint to the Commission or by action in the Circuit Court, that he must in the first instance complain to the Commission, and then have a jury pass upon exactly the same issues, with the finding of the Commission as *prima facie* evidence only.

When the plaintiff has the option under § 9 to complain to the Commission or by action in the Circuit Court, there can be no reason to require him to complain to the Commission in the first instance, when the *prima facie* finding of the Commission must be submitted to the court and jury, and may be promptly rejected.

When the question is one of "administrative discretion," every reason would require a party to secure in the first instance the "conclusive" finding of fact by the Commission; otherwise confusion would arise in having a court not charged with administrative duty to find the facts, instead of the Commission, which was charged with the duty of administration in connection with the question involved. When, however, the complaint is simply to recover damages for past wrongs, no reason can require the party to get, in the first instance, the *prima facie* finding of the Commission to submit to a jury which, by § 9, has the right to pass upon the case in the first instance, and no confusion can arise because the finding of the Commission in such a case is only *prima facie* and must finally be submitted to the jury. When no confusion can arise as between the Interstate Commerce Commission and the Circuit Court, jurisdiction remains in the Circuit Court. *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, at pages 440, 441.

*Mr. John G. Johnson*, with whom *Mr. Frederic D. McKenney* and *Mr. Francis I. Gowen* were on the brief, for appellee:

The coal company can only recover in case it establishes:

That the rule or system established and pursued by the railroad company or in the distribution of its cars was transgressive of the provisions contained in the Interstate Commerce Act prohibiting discrimination by a common carrier.

That the rule or system advocated by the coal company should have been pursued by the railroad company in making the distribution of its cars.

That in making distribution of its equipment in any given period of time a carrier is guilty of discrimination if it fails in any month in such period to allot and deliver to each shipper his or its *pro rata* of cars, and that over-deliveries in other months more than sufficient to make good the shortage in any one or more months cannot be taken into consideration.

All of these propositions were primarily, at least, for the consideration of the Interstate Commerce Commission. *Int. Com. Comm.* v. *Illinois Cent. R. R. Co.*, 215 U. S. 452; *Balt. & Ohio R. R. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 481.

In this case the coal company attacked as discriminatory, and as consequently unlawful, the regulation or rule which had governed the railroad company in the distribution of its equipment, and sought to have substituted therefor a different regulation or rule as the one which should have governed in such distribution.

The power and authority of the Interstate Commerce Commission must be regarded as extending to and embracing the authority necessary to pass upon and determine whether the method or system of the defendant in error was proper, and if not, whether that advocated by the plaintiff in error was the proper and correct one.

MR. JUSTICE LAMAR delivered the opinion of the court.

There are a large number of coal mines in the Clearfield District, Tyrone Division of the Coal Region, in the State

of Pennsylvania. Between January 1, 1900, and December 31, 1905, the total output of the mines in the Clearfield District averaged 18,500 tons per day. When there was a car shortage, the Pennsylvania Railroad allotted to each mine a percentage of cars assigned to the District, calculated according to the capacity of the mine.

On this basis the Morrisdale Coal Company was entitled to about 4.8 per cent and the Berwind-White Company to about 18 per cent.

In 1908 the Morrisdale Company brought suit against the Railroad for damages alleged to have been occasioned by an unfair distribution of cars to it and an undue allotment of cars to its competitor, the Berwind-White Company.

Alleging that in violation of its duty to see that no undue preference was given to any other person or corporation in the District, the carrier failed to assign to the plaintiff its *fair proportion of the entire number of coal cars of the Railroad Company*, to which plaintiff was entitled and that this failure continued from the beginning of 1900 to the close of 1905, the effect of which was to subject plaintiff to unreasonable prejudice with respect to the facilities for shipping coal as contrasted with the facilities furnished other competitors in the Clearfield District, and as a result of the unfair discrimination and the failure to furnish a proper allotment of cars and equal facilities, plaintiff was obliged to buy coal at various times in the outside market at prices then prevailing in order to fill its contracts previously entered into—to its damage $250,000. The defendant entered a plea of not guilty and *actio non accrevit infra sex annos.* On the trial, the jury found that the exhibit showing damages of $67,156.07 was correct. "If the court shall be of opinion that the questions of law involved in the case are in whole or in part with the plaintiff, we find for the plaintiff. If,

however, the court be of opinion that the questions of law are with the defendant, then we find in favor of the defendant."

There was no conflict in the evidence, and in view of the admissions of the plaintiff incorporated in the record, the facts can be briefly stated.

The capacity of plaintiff's mine was 4.8 per cent. of the output of the Clearfield region, and having been furnished access to the books of the carrier, it made up a statement showing that during 23 months between March, 1902, and December 31, 1905, in which there was a car shortage, the Morrisdale Company received less than its 4.8 of all the coal cars in the Clearfield region, while the Berwind-White Company received more than its 18 per cent. of all the coal cars in the region.  This was admitted by the Railroad, which insisted that during periods of car shortage it divided the cars into four classes:

1. Private cars, belonging to persons or corporations operating mines in the district;

2. Cars of foreign railroads consigned to designated mines to be loaded with fuel for such foreign railroads;

3. Pennsylvania Railroad fuel cars, consigned to designated mines to be loaded with fuel for railroad use;

4. The balance, or System cars, available for general use, it distributed among the various mines in the proportion their capacity bore to the total output of the. Clearfield region, the plaintiff being allotted its due proportion, or 4.8 per cent thereof.

The Railroad explained that the apparent excess of cars furnished the Berwind-White Company during the 23 months referred to was due to the fact that that company owned a large number of private cars on which it appeared that wheelage was paid and submitted the following table

showing the number and character of cars in the Clearfield
Region during those years:

|  | Individual | Company coal | System | Foreign | Commercial Box | Total |
|---|---|---|---|---|---|---|
| 1902 Cars placed | 14,221 | 16,119 | 31,048 | 22,544 | 11 | 83,943 |
| 1903 Cars placed | 20,483 | 15,614 | 20,947 | 24,222 | 13 | 81,279 |
| 1904 Cars placed | 16,705 | 11,477 | 21,888 | 14,568 | 12 | 64,650 |
| 1905 Cars placed | 26,716 | 22,812 | 24,769 | 5,542 | 374 | 80,213 |
| Total | 78,125 | 66,022 | 98,652 | 66,876 | 410 | 310,085 |

During the trial plaintiff admitted that there had been
no intentional discrimination against it, but contended
that its statement was made up from the books on the
basis of what it considered to be the law of the case, under
which *all cars available for shipment of coal should be
counted in the distribution.*

Plaintiff admitted that if the Berwind-White Company
was entitled to the use of their private cars, without
counting them against what it was entitled to under the
percentage, then the Berwind-White Company did not
get an excess of their percentage. It further admitted
that if Fuel cars of the Pennsylvania Railroad, and Fuel
cars of foreign railroads, consigned to particular mines
were not to be counted against such mines, then plaintiff
had no cause of complaint, inasmuch as it had received
its percentage of the balance or system cars.

The Circuit Court dismissed the case on the ground
that, without preliminary action by the Commission,
the court had no jurisdiction of a suit for damages alleged
to be occasioned by undue discrimination against the
plaintiff and undue preference in favor of its competitor.

The plaintiff took the case to the Circuit Court of
Appeals, complaining of this ruling and further assigning
error in that the court failed to enter judgment in its
favor on the special verdict.

The Circuit Court of Appeals held, one judge dissenting,
that the plaintiff had the option of taking the question

of jurisdiction by direct writ of error to the Supreme Court of the United States, or it could take the whole case, including the matter of jurisdiction, to the Circuit Court of Appeals. That court, thereupon, considered the whole record, and (one judge dissenting) affirmed the judgment of the Circuit Court on the ground that the Circuit Court had no jurisdiction as a Federal court until after the Commission had passed on the reasonableness of the method of car distribution. The case was brought here, the only question presented by the record being whether the Circuit Court as a Federal court had jurisdiction.

The prohibitions of § 3 of the Commerce Act require that cars shall be fairly allotted to shippers without unjust discrimination or unfair preference. But the statute does not define what is the proper method of distribution in case of car shortage, and at the time of the transactions out of which this suit arose, no general rule had been adopted by the carriers or promulgated by the Commission. As late as 1910, it was said (19 I. C. C. 387) that the question was in a state of flux, and an examination of the decisions in the numerous cases brought about that time will show that it was a matter about which there was much difference of opinion. In some cases it was held that private cars and fuel cars of foreign railroads consigned to particular mines, should be counted in making the distribution. Others held that such cars should be counted, but that if the foreign cars, or those owned by the private corporations, exceeded their percentage, the excess might be retained by those coal companies. This view was adopted by the Commission, which also held that fuel cars belonging to the carrier should be counted except where the railroad purchased the entire output of the mine. *Traer* v. *Chicago &c. R. R.*, 13 I. C. C. 451; *Hillsdale Coal Co.* v. *Pennsylvania R. R.*, 19 I. C. C. 356, 372; *Jacoby* v. *Pennsylvania R. R.*, 19 I. C. C. 392; *Minds* v. *Pennsylvania R. R.*, 20 I. C. C. 52.

It was, however, recognized that there could be no hard and fast rule and that circumstances might arise which would otherwise warrant a departure so as to enable the carrier to meet emergencies arising from a strike on its own road, or embargoes by connecting lines which refused to haul certain articles of merchandise in order to supply communities with necessaries of life. *Parks* v. *Cincinnati &c. Ry.*, 10 I. C. C. 47; *Thompson* v. *Pennsylvania R. R.*, 10 I. C. C. 640.

These rulings as to the validity of a particular practice and the facts that would warrant a departure from a proper rule actually in force, are sufficient to show that the question as to the reasonableness of a rule of car distribution is administrative in its character and calls for the exercise of the powers and discretion conferred by Congress upon the Commission. It was distinctly so ruled in the *Pitcairn Case*, 215 U. S. 481, and in *I. C. C.* v. *Illinois Central*, 215 U. S. 452. Those cases involve a consideration of the power of the Commission over the distribution of cars and held that the courts could not by mandamus compel it to make a rule, nor by injunction restrain the enforcement of one it had promulgated. If in those direct proceedings the courts could not pass upon the question of reasonableness of a method of allotting cars neither can it do so as an incident to an action for damages.

In view of the decision in the *Abilene, Pitcairn* and *Robinson Cases* it is unnecessary again to discuss the statute or do more than say that in this case the plaintiff was not entitled to maintain its action without producing an order of the Commission that the rule adopted by the Pennsylvania Railroad was unreasonable.

The plaintiff, however, seeks to take the case out of the principle of those decisions, insisting that this is a suit for damages occasioned by a violation of the rule—and that, therefore, without any order of the Commission it

is entitled to institute a suit for the recovery of damages resulting from the failure to distribute cars according to the method established by the Railroad itself. The record, however, does not sustain this position, for the evidence does not show any breach of the rule or any failure to deliver to the Morrisdale Company all of the cars to which it was entitled under the method of allotment in force between 1900 and 1906. On the contrary, it was admitted at the hearing that there had been no discrimination against the plaintiff in the application of the rule, the complaint being that the basis of allotment was unreasonable and that *all cars in the district* should be distributed according to the capacity of the mine without deducting private cars, foreign fuel cars, or the carrier's own fuel cars. Whether this should be done as a general rule, or under the peculiar conditions prevailing on defendant's road at that time was, as we have seen, an administrative question and to be decided by the Commission as preliminary to the right to maintain this suit. The Circuit Court rightly held that until this was done it had no jurisdiction as a Federal court of the cause of action sought to be enforced.

It is argued in the plaintiff's brief that if this view of the law should be sustained the case should not be dismissed but stayed until the plaintiff could apply to the Commission and obtain a ruling on the question as to whether the method adopted by the Pennsylvania Railroad was not, during the years 1900 to 1906 unjustly discriminatory. Attention is called to *Southern Ry.* v. *Tift*, 206 U. S. 428, 434, which it is said would support such a provision in the mandate. In that case the shippers filed, on April 14, 1903, a bill to enjoin an advance in rate. The injunction was refused and the advance went into effect. The cause was stayed while the complainants were pressing their application for an order from the Commission that the rates were unreasonable. Its report was in their favor and

on it the Circuit Court made an order of restitution (206 U. S. 436). But, in that case the statute of limitations had not run when the bill was filed, when the stay order was granted, nor when the application was made to the Commission; while in the present case the plaintiff was barred of the right to apply to the Commission at the date the suit was filed in the United States Circuit Court. The damages which were claimed arose from a failure to deliver cars prior to Dec. 31, 1905. The suit was brought July 17, 1908, more than two and a half years later and after the passage of the act of June 29, 1906, 34 Stat. 584, 590, c. 3591, that "all complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrued and not after and a petition for the enforcement of an order shall be filed in the Circuit Court within one year from the date of the order and not afterwards; Provided that claims accrued prior to the passage of this act may be presented within one year."

The provisions of this statute would prevent the modification asked for, and the judgment is

*Affirmed.*

MR. JUSTICE PITNEY dissented.[1]

---

[1] For dissenting opinion of MR. JUSTICE PITNEY in this case and in *Mitchell Coal & Coke Company* v. *Pennsylvania Railroad Company*, see *ante*, p. 267.