Newman, J.
The rule under which the demur-rage was charged and upon which plaintiff predicated its right of recovery provides .for the collection of demurrage for the detention of private cars while under lading on private tracks. It is averred in the petition and admitted by the demurrer that the plaintiff, engaged in interstate commerce, was obliged to and did, in compliance with the interstate commerce act, file with the interstate commerce commission its tariff or schedule, in which were published certain demurrage rules, including the one in question. It is claimed, however, that, within the meaning of the interstate commerce act, tariff is a schedule of charges “for transportation” and that transportation, as defined by the act, includes cars and services in connection with the receipt and delivery of property transported when provided and furnished by the carrier. We cannot agree with counsel that the term is used in this narrow sense. In Section 8563, U. S. Comp. *148 Stat., 1913, which is a part of the interstate commerce act, the term “transportation” is defined. It includes cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof, and all services in connection with the receipt, delivery, elevation and transfer, in transit, ventilation, refrigeration or icing, storage and handling of property transported. It is to be observed that it includes cars and all instrumentalities and facilities of shipment or carriage, irrespective of ownership. In these schedules the carrier, under the provisions of Section 8569, is required to state separately all terminal charges, storage charges, icing charges, and all other charges which the commission may require. It was held in Lehigh Valley Ry. Co. v. United States, 188 Fed. Rep., 879, that the demur-rage charged for the detention of cars in loading or unloading is a terminal charge required to be shown by the schedule of rates filed and published by an interstate railway company.
We do not think there can be any question but that, under the plain provisions of the interstate commerce act, demurrage rules relating to private cars employed in interstate commerce and the charges assessable thereunder are matters properly included in the tariff or schedule required to be filed and published. This tariff containing the demurrage, rule having been filed and published according to law, was binding alike on carrier and shipper, and so long as it was in force was to be treated as though it were a statute. Pennsylvania *149 Railroad Co. v. International Coal Mining Co., 230 U. S., 184. The freight rate charged for transportation by the carrier was the one fixed by the tariff, and the amount prescribed therein for the use of private cars was the 'one paid to plaintiff in error. But it is claimed that the demurrage rule in question is unlawful and therefore unenforceable. The matter under consideration has to do with interstate commerce. It was held in the Minnesota Rate Cases, 230 U. S., 352, that the authority of congress extends to every part of interstate commerce and to every instrumentality by which it is carried on, and a full control by congress over the subjects committed to its regulation is not to be denied or thwarted by the commingling of interstate and intrastate operations.
In the case of Procter & Gamble Co. v. C., H. & D. Ry. Co., 19 I. C. C. R., 556, the identical rulé here in question was passed upon by the interstate commerce commission. The contentions made by counsel here were made by complainant there, yet that tribunal held that the railway company was within its lawful rights in establishing and maintaining the rule complained of. But it is insisted that the commission had no authority to decide the question it did decide and that it had no power to approve such a rule. We shall review briefly the proceedings had in that case.
Relief having been denied it by the commission, The Procter & Gamble Company filed a petition in the commerce court of the United States, in which it was charged that the order of the commission dismissing the complaint was null and void and *150 beyond its powers in that it sustained the validity of the demurrage rules. The jurisdiction of the commerce court was challenged by the United States, the interstate commerce commission appearing for that purpose, and the commerce court, in disposing of the case, held that it had jurisdiction and on the merits decided that the commission had rightly refused to grant relief and that there was no foundation for the contention that the property of the company in its private cars was taken without due process of law by the demurrage regulation. The case was taken on appeal to the supreme court of the United States by The Procter & Gamble Company, and that court held that the commerce court erred in taking jurisdiction of the matter, upon the ground that the act creating the commerce court, giving it jurisdiction of cases brought to enjoin, set aside, annul or suspend orders of the interstate commerce commission, conferred on that court jurisdiction only to entertain complaints as to affirmative orders of the commission and therefore it had no jurisdiction to redress "complaints based exclusively, as in the case under consideration, on the ground that .the commission had refused the relief on the ground that it could not award it. Mr. Justice White, in the opinion, 225 U. S., 282, refers to the interstate commerce commission as an administrative body endowed with what may be in some respects qualified as quasi-judicial attributes, and he says, on page 292: “The question to be decided is this: Does the authority with which the commerce court is clothed in virtue of these provisions invest that body with jurisdic *151 tion to redress complaints based exclusively upon the conception that the interstate commerce commission, in a matter submitted to its judgment and within its competency to consider, has mistakenly refused * * * ?” It seems clear to us from the language used by the learned jurist — “in a matter submitted to its judgment and within its competency to consider” — that the question presented was one which the commission had the lawful right to decide and that it did not exceed its authority when it acted in the matter.
Counsel assert that they are making no claim that the rule complained of is unreasonable, but insist that it is unlawful and invalid. But the distinction, if there be one, is not material. The rule was assailed in The Procter & Gamble case before , the commission upon the same grounds urged against its validity here, and received the sanction and approval of the commission, and its validity was within its competency to consider. It called for the exercise of the powers and discretion conferred by congress upon the commission. Morrisdale Coal Co. v. Pennsylvania Railroad Co., 230 U. S., 304.
Under the provisions of the interstate commerce act, it was the positive duty of the carrier to collect the charges provided for in the tariff, and this is the purpose of the present action. The- demurrage rule upon which plaintiff relies relates to interstate commerce. It was passed upon by a federal tribunal having full authority to act and was approved. If the power existed in the courts of the states to question its rulings, it would result, most *152 likely, in diverging opinions and conflicting decisions in matters of interstate commerce, and would be' destructive of the uniformity of regulation which the interstate commerce act was designed to secure. It is admitted by the demurrer that the transportation of the cars in question was subject to the demurrage rule set out in the tariff, which was binding upon the shipper. This rule having been approved by a federal tribunal, acting within the scope of its authority, its decision must be followed by the courts of this state arid be given full force and effect.

Judgment affirmed.

Johnson, Donahue, Jones and Matthias, JJ., concur.