**CHICAGO AND NORTHWESTERN RAILWAY COMPANY, a corporation, Plaintiff,**

v.

**UNION PACKING COMPANY, a corporation, Defendant.**

**Civ. 03070, 03196.**

United States District Court,
D. Nebraska.

May 4, 1971.

Harry B. Otis, of Gaines, Spittler, Neely, Otis & Moore, Omaha, Neb., for plaintiff.

John Powers, of White, Lipp, Simon & Powers, Omaha, Neb., for defendant.

## MEMORANDUM OPINION

DENNEY, District Judge.

This action came on for trial before the Court on agreement of the parties that both civil cases be consolidated for trial, since they both involve the same parties and issues. The plaintiff, Chicago and Northwestern Railway Company [Northwestern], seeks to recover from the defendant, Union Packing Company [Union Packing], demurrage charges al-

legedly due as a result of the detention of refrigerated trailers beyond the free time provided in the applicable tariff.

The thrust of Northwestern's claims is that demurrage is due from the time that its agent placed these trailers in the loading stalls or "slots" at Union Packing's loading dock until the time designated upon bills of lading prepared by Union Packing notifying Northwestern that the trailers were ready to be shipped, less free time.

The following shall constitute the Court's findings of fact and conclusions of law.

The other participant, not a party to this action, involved in the transactions leading up to these claims for demurrage charges is Omaha Shag, Incorporated, a corporation employed by Northwestern to move its refrigerated "piggy back" trailers to and from various parking places and to replenish the supply of trailers available to Union Packing as openings came up at its loading dock.

Shag performed several other functions at the lot owned by Union Packing, including moving trailers out of the loading slots at the Union Packing dock when loaded and moving all the trailers situated at the loading dock out of and back into position several times a week when Northwestern found it necessary to use the track situated immediately adjacent to the loading dock for the purpose of filling a railroad car with cattle hides from the Union Packing building.

It was the practice of Shag, without any order from Union Packing, to place at least one Northwestern trailer in one of the Union Packing dock slots for future use, even though Union Packing presently had no need for it.

Apparently, since Shag was always around the lot, the Shag driver took it upon himself to place a Northwestern trailer in a loading slot whenever an opening came up. Union Packing never made direct contact with Shag, nor was Shag under its direction or control in the placement of Northwestern trailers at the dock. Union Packing apparently acquiesced in the storage of Northwestern trailers on its lot and the storage of trailers at the loading slots until needed, but did not order or request that this be done.

## CLAIM FOR DEMURRAGE DUE FOR DETENTION AFTER LOADING

After Union Packing received an order which required shipment by a refrigerated trailer of Northwestern, it would proceed to load one of the waiting trailers. This loading never consumed a period longer than three hours. Immediately after loading was completed, Union Packing prepared a bill of lading and Northwestern was notified of the waiting shipment.

According to the testimony of the witnesses for Union Packing, no trailers ever sat loaded on the Union Packing lot for any length of time before Northwestern was notified. The Court can conceive of no reason why Union Packing would load a refrigerated trailer and leave it on the lot for up to days at a time before notifying Northwestern, given the fact there were more efficient and safer storage facilities in the plant and the ready supply of trailers available to it.

The claims of Northwestern are based upon dates provided by Shag as to the movement of any given trailer, but the Court has chosen to accept the testimony of the witnesses of Union Packing over the largely unsubstantiated records of Shag presented in the exhibits before the Court. Northwestern chose to bear the risk that the evidentiary weight of the dates recorded by Shag might not be sufficient to controvert the testimony of Union Packing witnesses when it failed to present any testimony showing the validity or reliability of those records as prepared by Shag. Indeed, a witness for Northwestern testified that the railroad merely "assumed" the accuracy of the dates presented by Shag, but did not know whether they were accurate. The simple expedient of calling a witness

from Shag or presenting any evidence at all as to these factors was never performed. The claim that Union Packing left trailers on its lot after loading and before notifying Northwestern so as to accrue liability for demurrage is, thus, rejected.

## CLAIM FOR DEMURRAGE DUE AFTER POSITIONING AND BEFORE NOTIFICATION

The Court does not feel that the dates presented by Shag should be relied upon in any event, but, assuming, arguendo, the accuracy of the dates noted by Shag for the positioning of trailers at the Union Packing loading dock, the claim of Northwestern that free time began to run from those dates until notification to Northwestern of readiness for shipment must be considered. Union Packing asserts that it is only liable for demurrage if, from the time loading commenced until it notified Northwestern, it went beyond the ten hours of free time provided in the tariff. Under the facts already discussed, it would not be liable for any demurrage charges if this position is correct. Northwestern asserts that the free time must be considered to have begun running at the time Shag placed the trailers at the loading slots of the Union Packing dock.

The applicable tariff is Western Trunk Lines Freight Tariff 453–D [I. C.C. No. A–4591]. Item 225(1) of that tariff, entitled "FREE TIME," designates that the shipper generally has ten (10) hours from the time of actual or constructive placement before demurrage charges begin to accrue. It also provides that the free time does not begin to run except when the detention is "due to no disability, fault or negligence on the part of the carrier * * *"

Item 220(1) defines actual and constructive placement as follows:

"ACTUAL PLACEMENT"—means the placing of the vehicle at the place designated by the consignor or consignee for loading or unloading.

"CONSTRUCTIVE PLACEMENT" —means the holding of a vehicle at a point other than the designated loading or unloading place due to the inability of the consignor or consignee to accept the vehicle after notification * * *

The imposition of demurrage charges due to the placing of the trailers in the slots, not at the order or request of Union Packing, but for the convenience and benefit of Shag and Northwestern would not be proper here. The trailers placed in the loading slots by Shag were no more appropriated or ordered by Union Packing than those which it allowed Northwestern to store on its lot. Since it is not at all clear what constitutes "designated" as set out in the definition of the term "placement" in Item 220(1) above, in that determination, the tariff must be given a reasonable construction, Menasha Paper Co. v. Chicago & Northwestern Ry., 241 U.S. 55, 36 S.Ct. 501, 60 L.Ed. 885 [1916], and should be read in a light most favorable to the shipper. 13 C.J.S. Carriers § 343, Southern Ry. v. Aluminum Company of America, 119 F.Supp. 389 [E.D.Tenn.1951], aff'd, 210 F.2d 139 [6th Cir. 1954]. This rule, along with the recognition that demurrage charges imply delay through inattention, neglect or retention for personal uses, Turner, Dennis & Lowry Lumber Co. v. Chicago, Milwaukee & St. Paul Ry., 2 F.2d 291, 296 [W.D.Mo.1924], aff'd, 271 U.S. 259, 46 S.Ct. 530, 70 L.Ed. 934 [1926], leads this Court to the conclusion that the term implies that there must be an affirmative act by the shipper revealing not only the place, but also the fact that the vehicle is needed for loading by the shipper. Were it read otherwise, the carrier could, as here attempted, merely place a vehicle at any normal place of loading without any order from the shipper and begin charging demurrage after the free time ran out upon a trailer that the shipper never ordered and, in fact, did not need at all. It surely cannot be the intent of the tar-

**1308**

iff that the railroad could charge demurrage upon unordered vehicles. The Court finds that the point at which the free time started to run in this situation was that point where Union Packing undertook an affirmative act appropriating any given trailer to its own use, i. e., whenever it began loading operations.

Even if placement might be held to have occurred at the questionable dates asserted, under the specific terms of the tariff at Item 225(1), the shipper cannot be held liable for demurrage charges for detention caused by the fault or negligence of the carrier. This Court finds that if any detention was caused here which prevented the trailers from being used in their proper office in transportation it was due to the fault and neglect of the carrier in its improper method of supplying trailers to Union Packing without first receiving a specific order for a trailer and keeping an accurate tally of the time consumed in loading and prior to notification.

The Court does not imply that demurrage can be waived by an agreement between the parties, for the law is clear that it cannot be. 49 U.S.C.A. §§ 2, 3(1) and 6(7); Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 953 [1939].

The law is equally clear, however, that demurrage cannot be charged where cars are kept upon the property of the shipper for the convenience of the carrier until the point they are appropriated to the use of the shipper. Pacific Portland Cement Co. v. Western Pacific R. R., 184 F.2d 34 [9th Cir. 1950], cert. denied, 340 U.S. 906, 71 S.Ct. 282, 95 L.Ed. 655. The Court finds that the appropriation in the cases now before it occurred at the time that Union Packing began its loading operations on each trailer.

Given the fact that the free time of ten (10) hours began to run at the time that Union Packing started its loading operation; that the loading of any given trailer never consumed longer than three (3) hours; and that upon the completion of loading Union Packing immediately prepared a bill of lading and notified Northwestern, the Court finds that there was never any detention beyond the free time and, thus, the Court, as a conclusion of law based on the foregoing facts, finds that no demurrage charges are due from Union Packing Company upon any of the claims asserted by plaintiff.

The foregoing shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

The Court determines, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, that each party to this action should bear its own costs in this action incurred up to the date of this Opinion.

An Order of Judgment will be entered contemporaneously with this Opinion.