CENTRAL STOCK YARDS CO. v. LOUISVILLE & N. R. CO.

(Circuit Court, W. D. Kentucky. January 23, 1902.)

1. INTERSTATE COMMERCE—VIOLATIONS OF ACT—REMEDIES—EXCLUSIVE—INJUNCTION.

Interstate Commerce Act, § 3, requires every common carrier, subject to the provisions of the act, to afford all proper and equal facilities for the interchange of traffic between their respective connecting lines. Section 8 makes every such carrier liable, to the person injured by the violation of any provision of the act, for the damages sustained thereby. Section 9 provides that any person claiming to be so damaged may either make complaint to the commission, or may bring suit for the recovery of such damages, in a district or circuit court of the United States. Section 16 authorizes a resort to equity to enforce the commission's rulings. *Held*, that the remedies provided by sections 8 and 9 of the act are exclusive, and hence a bill for injunction to compel obedience to section 3 will not lie.

2. SAME—PRELIMINARY INJUNCTION—DOUBTFUL RIGHT.

Where, in an action against a railroad company, which has a stock yard in a certain city, to compel it to deliver stock shipped over its road to such city to a connecting carrier to take to another stock yard therein, defendant has answered, and complainant's right to a preliminary injunction is not practically free from doubt, it should not be granted.

W. M. Smith and Dodd & Dodd, for complainant.

Helm, Bruce & Helm and Gibson, Marshall & Gibson, for defendant.

EVANS, District Judge. The complainant, the Central Stock Yards Company, has very recently established a large and expensive

plant for the conduct of its business. It is located on the line of the Southern Railway Company, just outside of the limits of the city of Louisville. Some 12 or more years ago the Louisville & Nashville Railroad Company, having no adequate depot facilities for handling live freight, entered into a contract with the Bourbon Stock Yards Company (the plant of which was located within the city limits), under which that stock yards company was to erect, and it did erect and provide, at large expense, a depot for the defendant for receiving, loading, and unloading and shipping live stock, and, in consideration of what was done and expended by the Bourbon Stock Yards Company, the defendant agreed that the depot thus provided should be, and should continue to be, its only live stock depot in the city of Louisville, and accordingly it has been such ever since and is now. There is a physical connection between the tracks of the defendant and those of the Southern Railway Company in the city, and other freight in car-load lots, by arrangement between the two companies, is interchanged between them within the city limits. The situation being thus, about the time this bill was filed certain car loads of cattle designed for sale at complainant's yards were shipped to Louisville from states other than Kentucky, and the defendant refused either to bill the freight to the complainant at the Central Stock Yards, Ky., or otherwise than to Louisville simply, and refused to deliver it to the consignee at any other place in the city except at its live stock depot at the Bourbon Stock Yards, and refused to deliver it to the Southern Railway Company at any of the points of physical connection of the two roads, although a demand for all the things thus refused was made upon the defendant by the complainant and also by the shippers of the freight; whereupon this suit in equity was brought to compel the defendant, by means of a mandatory injunction, to do all the things just mentioned, the claim to the relief thus sought being avowedly based upon the provisions of section 3 of the interstate commerce act, as possibly aided by the provisions of the constitution of Kentucky. The bill attempts to show the very great injury that would be inflicted upon the complainant if the defendant is not compelled to bill and ship such freight to the complainant direct, and to deliver it at points of physical contact in Louisville to the Southern Railway Company, to be transported by it to the complainant's yards. The evidence offered by the complainant was designed more explicitly to show the injury, and the details of it, which would result to the complainant if the defendant is not compelled to obey the provisions of the interstate commerce act, which, it is insisted, are being violated and disregarded by the defendant.

Upon filing the bill, the complainant moved the court for an injunction pendente lite, as prayed for therein, and the court appreciates the importance, to all the parties who are concerned in the litigation, of the very interesting questions which have thus arisen; but the view the court takes of them, particularly at this hearing, makes it unnecessary to state more than one or two of the various grounds upon which the defendant resists the motion. No demurrer to the bill of complaint has been filed. The defendant has answered,

and that pleading has been read as an affidavit on the hearing of the pending motion.

The first inquiry that always presents itself at the outset of every case in the courts of the United States is, has jurisdiction been shown? And this inquiry in this case divides itself into two questions—First, has the court jurisdiction over the subject-matter of the action? and, second, if so, does it come within its equitable powers? The diverse citizenship of the parties to this litigation appears upon the face of the bill, though that is immaterial if the right claimed is founded upon a law of the United States; but does it appear from the bill that equity has jurisdiction of the case as presented by the actual facts stated in that pleading? This inquiry would have to be answered in the negative if other exclusive remedies are provided by law. I do not say that it is impossible to present a state of case where an injunction might not lie to enforce rights created under the interstate commerce act, but on the facts stated in this particular bill of complaint is this such a case? The supreme court in the case of Railroad Co. v. Jacobson, 179 U. S. 296, 21 Sup. Ct. 118, 45 L. Ed. 194, used this language: "At common law the court would be without power to make such an order as was made in this case by the state court. Legislative authority would be necessary in order to give power to the court to render a judgment of this kind." This language would, I think, aptly apply to the orders asked to be made in this case. The rights created by section 3 of the interstate commerce act did not exist at common law, and the legislation which was necessary to create them can only be found in that act. That legislation seems to have been the sole origin of the rights now sought to be enforced. While some reliance seems to be placed upon the provisions of the Kentucky constitution, I can see no material difference between what that constitution does and what the interstate commerce act does. This suit, at all events, seems to have been brought to enforce the rights, if any, conferred upon the complainant by the congressional legislation referred to, and this raises the very important jurisdictional question that presents itself in limine. Section 3 of the interstate commerce act is in this language:

"Sec. 3. That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. Every common carrier subject to the provisions of this act shall, according to their respective powers, afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding, and delivering of passengers and property to and from their several lines and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines; but this shall not be construed as requiring any such common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business."

Sections 8 and 9 of the act are as follows:

"Sec. 8. That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter or

thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

"Sec. 9. That any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any district or circuit court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt. In any such action brought for the recovery of damages the court before which the same shall be pending may compel any director, officer, receiver, trustee, or agent of the corporation or company defendant in such suit to attend, appear and testify in such case, and may compel the production of the books and papers of such corporation or company party to any such suit; the claim that any such testim. ny or evidence may tend to criminate the person giving such evidence shall not excuse such witness from testifying, but such evidence or testimony shall not be used against such person on the trial of any criminal proceeding."

It will thus appear that congress has not only created a new right by section 3 of the act,—a right which did not exist at common law nor by any previous congressional enactment,—but has also by the same act expressly provided remedies to protect and enforce that right by sections 8 and 9. Are not those remedies thus provided exclusive of all others? The court is strongly inclined to believe that this question must be answered in the affirmative, upon the very explicit language found in the opinions in the following cases: Haycraft v. U. S., 22 Wall. 98, 22 L. Ed. 738; Bank v. Dearing, 91 U. S. 35, 23 L. Ed. 196; Barnet v. Bank, 98 U. S. 555, 25 L. Ed. 212; Carter v. Carusi, 112 U. S. 483, 5 Sup. Ct. 281, 28 L. Ed. 820; East Tennessee, V. & G. R. Co. v. Southern Tel. Co., 112 U. S. 306, 5 Sup. Ct. 168, 28 L. Ed. 746; McBroom v. Investment Co., 153 U. S. 325, 14 Sup. Ct. 852, 38 L. Ed. 729.

The proposition is probably most clearly stated in the following language from 22 Wall. 98, 22 L. Ed. 738:

"But the same statute which authorized the capture gave a right to certain persons to demand and receive a restoration of their property taken. Coupled with the right to demand was a provisi n for the remedy by which it was to be enforced. Both the right and the remedy are therefore created by the same statute, and in such cases the remedy provided is exclusive of all others. The demandant in this case neglected to avail himself of the remedy provided, and consequently he is now without any. That remedy was the only one which the court of claims or any other court has been authorized to take jurisdiction. It is for congress, not the courts, to determine whether this jurisdiction shall be extended and other remedies provided."

Are not the courts, in a case such as is presented by this bill, bound to hold that the remedies provided by sections 8 and 9 of the act for violation of rights bestowed by section 3 of the act are as adequate and efficient as congress chose to provide in connection with the rights it created, and, if this be true, is not the complainant

limited to the two remedies provided by section 9 of the act, one of which is an action at law for damages, and the other is an application to the interstate commerce commission. Why are these remedies not adequate and efficient, and, if we should think not, then why is not the judgment of congress conclusive upon the courts? See extract above quoted from 22 Wall. 98, 22 L. Ed. 738. It is true that Judge Hammond, in the case of Little Rock & M. R. Co. v. East Tennessee, V. & G. R. Co. (C. C.) 47 Fed. 773, 774, expressed a contrary opinion, even while observing that it was not necessary to pass upon the question. He said, however, that he based his opinion upon that of Judge Jackson in the case of Kentucky & I. Bridge Co. v. Louisville & N. R. Co. (C. C.) 37 Fed. 567, 2 L. R. A. 289. But the case then before Judge Jackson was one which not only did not call for the decision of the question, but one in which it does not seem to have been decided at all. On the contrary, that was a case brought to enforce orders of the interstate commerce commission and was based upon section 16 of the interstate commerce act; thus invoking a remedy expressly provided for by that section of the act itself. The court is referred also to the case of Interstate Stock Yards Co. v. Indianapolis U. R. Co. (C. C.) 99 Fed. 483, where, it is true, an injunction was granted upon facts somewhat similar to those stated in this case; but the question to which I have alluded was not mooted in that case, and therefore not decided by Judge Baker, and the element of contract between the parties may have been, and probably was, the controlling factor in the conclusion he reached. In what we may call the Arthur Cases, decided by Judge Taft (54 Fed. 730), there was the element of conspiracy to injure as a principal ground of relief, and it does not appear that those cases turned upon the question we are considering.

It seems quite clear, when we consider the scheme and purpose of the interstate commerce act, that there was good reason for congress to limit the remedies provided by the act. For any violation of the rights of any person as fixed and created by the third section of the act, he might sue at law for the damages, or, if the question were a broader one than could be adequately settled in such an action, then an application could be made to the commission created by the act, and which was clothed with powers specially adapted to the investigation of such questions. It is only when a ruling has been made by that commission that the powers of a court of equity can, under the act, be invoked for the enforcement of such ruling if the carrier refuses to comply with it. This course is definitely provided for by section 16 of the act. It will thus, it seems to the court, be clearly seen that the fullest, and, in the judgment of congress, the most appropriate, remedies were provided for the protection of the rights created under section 3 of the act, viz.: First, a suit at law; second, an application to the interstate commerce commission; and third, a suit in equity to enforce any ruling of the commission upon such application; and this latter contingency is the only one that authorizes equitable interference, unless we ignore the legislation of congress, and appeal to some

higher law. Congress alone had power to create the right, and to provide the remedies for its vindication. Its action upon the subject can neither be changed nor enlarged by the courts. It was final.

But, if we find ourselves safely past these questions, then others of equal doubt and difficulty present themselves upon the issues tendered by the defendant. What are the rights of the respective parties to this litigation? As to part of the relief sought one important question is, can the court compel the defendant carrier to issue bills of lading to points on connecting lines when the defendant itself does not, in the conduct of its business, deem it wise or proper or just to itself to do so. Under the authority of cases like Little Rock & M. R. Co. v. St. Louis, S. W. R. Co., 11 C. C. A. 417, 63 Fed. 775, 26 L. R. A. 192, it would seem that this question ought to be answered in the negative. Another important inquiry, looking at the case from the standpoint of the defendant, is this: What effect on this case must be conceded to rulings like those in the cases of Stock Yards Co. v. Keith, 139 U. S. 128, 11 Sup. Ct. 461, 35 L. Ed. 73, and Butchers' & Drovers' Stock Yards Co. v. Louisville & N. R. Co., 14 C. C. A. 290, 67 Fed. 41, which were much like the one now before us, and wherein the courts held that a railroad company was not bound to maintain more than one live stock depot in a city, nor to make delivery of such freight, when consigned to such city, at more than one live stock depot?

On the other hand, section 3 of the interstate commerce act was no doubt intended to subserve a wise and beneficent public purpose, especially in prohibiting a carrier from subjecting any particular corporation or person to any undue or unreasonable prejudice or disadvantage whatever, and in requiring such carrier to afford all reasonable, proper, and equal facilities for the interchange of traffic with connecting lines, where such facilities do not require any carrier to give the use of its tracks or terminal facilities to another carrier engaged in the same business. The two first of these clauses of the act are appealed to by the complainant, but the defendant insists that the complainant's demands would compel it to give to a rival the use and benefit of its tracks and terminals in the city of Louisville. It may be that the carrier in this case, being a creature of law for the public benefit in large measure, might, by a proper proceeding, be compelled to do many of the things demanded of it in this action; but it is a proper and well-settled rule that the chancellor should not grant a preliminary injunction unless the case is practically free from serious doubt, especially where defenses are set up. Paine v. Playing Card Co. (C. C.) 90 Fed. 543; Kilburn v. Ingersoll (C. C.) 67 Fed. 46; Insurance Co. v. Nobles (C. C.) 63 Fed. 642.

It seems to the court in this case that there are too many doubts as to the propriety of the remedy invoked in this litigation, and as to the rights of the respective parties to the suit, to warrant any such prejudgment as would be involved in the granting of a preliminary injunction. Such questions, therefore, should all be referred to the final hearing of the cause, when they can be deter-

mined, not upon ex parte affidavits, but after a full examination and cross-examination of the witnesses.

Whatever may be the ultimate result, the motion for a temporary injunction is denied and overruled.