## SULLIVAN v. UNION STOCKYARDS CO. OF OMAHA, Limited.

Circuit Court of Appeals, Eighth Circuit. April 19, 1928.

No. 7944.

1. **Constitutional law** ⟨⟩80(1, 2)—**Statutes conferring on officers, boards, or commissions quasi judicial functions are not unconstitutional as encroachments, on judiciary.**

The general rule is that statutes conferring on officers, boards, or commissions quasi judicial functions, such as necessity of inquiry into and finding of facts incidental to exercise of powers properly within scope of legislative or executive authority, are not unconstitutional as encroachments on the judiciary.

2. **Warehousemen** ⟨⟩27—**Order of Secretary of Agriculture, directing stockyards company to cease collecting certain rate as discriminatory, without providing for reparation, held not to authorize recovery of excess payments (Packers and Stockyards Act 1921 [7 USCA c. 9]).**

Under Packers and Stockyards Act 1921 (7 USCA c. 9), order of Secretary of Agriculture determining that a published and filed rate for stockyard services is unreasonable and discriminatory, and giving right to reparation, whether relating to present or past rates, is a quasi judicial order, and is necessary prerequisite to suing in courts for excess payment, and order of Secretary merely finding that certain charge was discriminatory and ordering stockyards company to desist from demanding and collecting it after certain date, but not finding right to nor ordering reparation, did not authorize recovery of excess, in view of similar interpretation given Interstate Commerce Act (49 USCA §§ 1–22, 25–27; Comp. St. § 8563 et seq.).

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by William J. Sullivan against the Union Stockyards Company of Omaha, Limited. Judgment for defendant, and plaintiff brings error. Affirmed.

Edward P. Smith and William A. Schall, both of Omaha, Neb., Francis S. Howell, of Lincoln, Neb., and Frank E. Sheehan, of Omaha, Neb., for plaintiff in error.

Norris Brown, David A. Fitch, and Ralph M. West, all of Omaha, Neb., for defendant in error.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and JOHN B. SANBORN, District Judge.

JOHN B. SANBORN, District Judge. The parties will be designated as in the court below, namely plaintiff and defendant.

The defendant is a stockyards owner and subject to the provisions of the Packers and Stockyards Act 1921 (7 USCA c. 9). On October 20, 1921, the defendant published and filed with the Secretary of Agriculture, as required by the act, schedules showing its rates and charges for stockyard services rendered at its stockyards in Omaha, Neb., which thereupon became and were the only charges which it could lawfully collect during the time that such schedules remained unchanged.

Its Tariff No. 1 read as follows:

"Yardage; including privilege of the market:
Cattle .....................35 cents per head
Calves (maximum 425 pounds) 25 cents per head
Hogs .......................12 cents per head
Sheep or goats..............8 cents per head
Horses and mules...........35 cents per head
"For live stock planted and resold in commission division, one-half the above rates additional will be charged."

The plaintiff was a trader at the stockyards and the assignee of the claims of a number of other traders upon the same market, who bought, planted, and resold a large number of animals between the 20th day of October, 1921, and the 1st day of October,

1923. The plaintiff and his assignors were charged and had paid the additional yardage or reweighing charges provided by the tariff, to the amount of $34,988.52, which amount the plaintiff sued to collect, on the ground that these charges were discriminatory and therefore unlawful.

On June 22, 1923, upon the complaint of T. G. Inghram, a similar dealer, that the additional charge referred to was discriminatory, the Secretary of Agriculture found that it was, and ordered that after July 10, 1923, the defendant desist from demanding and collecting it. No reparation was ordered by the Secretary, and no findings of the existence of any right to reparation were made.

Planting and reselling of animals is done by small traders, who place or leave the animals they buy with the commission men for the purpose of having them resold; this for the reason that the large packers do not buy from the small trader, but from the commission men. In other words, the commission men sell not only their animals, but the animals "planted" with them by the traders.

The defendant claimed that the complaint did not state a cause of action, and that the court had no jurisdiction to award any judgment for the plaintiff, because of the absence of allegation or proof that the Secretary of Agriculture had determined that any right to reparation existed, either on behalf of the plaintiff or any other person who had paid the charges.

After hearing the testimony, the court below gave judgment for the defendant on the ground that no order had been made by the Secretary fixing any right to reparation. It is the correctness of this disposition of the case which the plaintiff challenges by these proceedings in error.

The Packers and Stockyards Act is patterned upon the Act to Regulate Commerce, and the plaintiff concedes the applicability to this case of the rule recognized by this court in Chicago, B. & Q. R. Co. v. Merriam & Millard Co., 297 F. 1, and Famechon Co. v. Northern Pacific R. Co., 23 F.(2d) 307, to the effect that, in cases arising under that act, preliminary resort must first be had to the Interstate Commerce Commission, and the right to reparation fixed, before suit may be successfully maintained in the courts.

It is claimed, however, that such an interpretation of the Packers and Stockyards Act and of the Act to Regulate Commerce renders them unconstitutional, because it gives to the Secretary of Agriculture, in the one instance, and to the Interstate Commerce Commission, in the other, judicial powers.

No case is cited in the plaintiff's brief which has any bearing on the specific question. He refers to the general proposition that executive, legislative, and judicial functions shall be kept separate, and that persons intrusted with power in any one of these three branches shall not be permitted to encroach upon the powers confided to others. About this, of course, there is no dispute. He cites Interstate Commerce Comm. v. Brimson, 154 U. S. 447, 14 S. Ct. 1125; 38 L. Ed. 1047, in which it was held that the Commission could not be invested with authority to compel obedience to its orders by a judgment of fine or imprisonment, on the ground that "the power to impose fine or imprisonment in order to compel the performance of a legal duty imposed by the United States, can only be exerted, under the law of the land, by a competent judicial tribunal having jurisdiction in the premises." There is a vast and obvious distinction between the power to order a man to jail and the power to determine from evidence whether a right to reparation exists because of a discriminatory charge.

That the Interstate Commerce Commission possesses certain quasi judicial powers has long been recognized by the Supreme Court, without perturbation. In Interstate Commerce Comm. v. Louis. & Nash. R. R., 227 U. S. 88, 91, 33 S. Ct. 185, 186 (57 L. Ed. 431), Mr. Justice Lamar, in discussing the question as to whether an order reducing rates could be sustained without substantial evidence to support it, said:

"In the comparatively few cases in which such questions have arisen it has been distinctly recognized that *administrative orders, quasi judicial in character,* are void if a hearing was denied; if that granted was inadequate or manifestly unfair; if the finding was contrary to the 'indisputable character of the evidence.' "

In Interstate Commerce Comm. v. Cincinnati, etc., Ry. Co., 167 U. S. 479, 501, 17 S. Ct. 896, 901 (42 L. Ed. 243), referring to the powers of the Interstate Commerce Commission, it was said: "The power given is partly judicial, partly executive and administrative, but not legislative."

[1] It is the general rule that "statutes conferring on officers, boards, or commissions quasi judicial functions, as, for example, the necessity of inquiry into, and a finding of, facts incidental to the exercise of powers properly within the scope of legislative or executive authority, are not unconstitutional as encroachments on the judiciary." 12 C. J. 809.

[2] Much the same contention as is made by the plaintiff here was made with respect to the powers of the Interstate Commerce Commission in Mitchell Coal Co. v. Penn. R. R. Co., 230 U. S. 247, 33 S. Ct. 916, 57 L. Ed. 1472. Mr. Justice Lamar, on page 257 (33 S. Ct. 921), says:

"Section 9 [Act to Regulate Commerce (49 USCA § 9; Comp. St. § 8573)] gives the plaintiff the option of going before the Commission or the courts for damages occasioned by a violation of the statute. But since the Commission is charged with the duty of determining whether the practice was so unreasonable as to be a violation of the law, the plaintiff must, as a condition to his right to succeed, produce an order from the Commission that the practice or the rate was thus unreasonable and therefore illegal and prohibited.

"It is argued that under the Abilene, Robinson, and Pitcairn Cases this may be true as to existing rates in which the public have an interest, but it is urged that a claim based upon the unreasonableness of past rates and discontinued practices raises a judicial question, of which the courts and not the Commission have jurisdiction.

"There are several answers to this proposition. In the first place, the plaintiff cannot claim under the act and against it. To say the least, it is extremely doubtful whether, at common law, one shipper had a cause of action because the carrier paid another shipper more than the market value of transportation services rendered to the carrier. I. C. C. v. B. & O. R. R., 145 U. S. 263, 275 [12 S. Ct. 844 (36 L. Ed. 699)]. But if any such right existed it was abrogated or forbidden by the Commerce Act [49 USCA §§ 1–22, 25–27; Comp. St. § 8563 et seq.], and one was given which, as a condition of the right to recover, required a finding by the Commission that the allowance was unreasonable and operated as an unjust discrimination or as an undue preference. Texas, etc., Ry. v. Cisco Oil Mill, 204 U. S. 449 [27 S. Ct. 358, 51 L. Ed. 562]; Texas, etc., Ry. v. Abilene Co., 204 U. S. 426, 444 [27 S. Ct. 350 (51 L. Ed. 553, 9 Ann. Cas. 1075)]; Southern Ry. v. Tift, 206 U. S. 428, 437 [27 S. Ct. 709 (51 L. Ed. 1124, 11 Ann. Cas. 846)]; United States v. Pacific & Arctic R. R., 228 U. S. 87 [33 S. Ct. 443, 57 L. Ed. 742]. Such orders, so far as they are administrative are conclusive, whether they relate to past or present rates, and can be given general and uniform operation, since all shippers, who have been or may be affected by the rate, can take advantage of the ruling and avail themselves of the reparation order. They are quasi judicial and only prima facie correct in so far as they determine the fact and amount of damage—as to which, since it involves the payment of money and taking of property, the carrier is by § 16 of the act given its day in court and the right to a judicial hearing (March 2, 1889, 25 Stat. 855, 859, c. 382 [49 USCA § 16; Comp. St. § 8584])."

Furthermore, on page 259 (33 S. Ct. 921), it is said:

"As to past and present practices for allowances, the Commission has the same power and there is the same necessity to take preliminary action. This was recognized in Texas, etc., Ry. v. Abilene Co., 204 U. S. 426 [27 S. Ct. 350 (51 L. Ed. 553, 9 Ann. Cas. 1075)], where, after considering sections 8 and 22 [49 USCA §§ 8, 22; Comp. St. §§ 8572, 8595], relating to jurisdiction and the statutory and common law remedy, it was said that although a railroad might alter its rates voluntarily or in obedience to an order of the Commission, yet it can 'not be doubted that the power of the Commission would nevertheless extend to hearing legal complaints of and awarding reparation to individuals for wrongs unlawfully suffered from the application of the unreasonable schedule during the period when such schedule was in force.' A contrary ruling would upset a useful, time-saving, economical and established practice. For in accordance with this construction of the act the Commission, after the abandonment of a rate, has repeatedly received and heard complaints and, upon finding that it had been unreasonable, has granted reparation accordingly. See Arkansas Fuel Co. v. C., M. & St. P. Ry. Co., 16 I. C. C. 95, 98; Allen & Co. v. C., M. & St P. Ry. Co., 16 I. C. C. 293, 295."

See, also, Penn. R. R. v. Clark Coal Co., 238 U. S. 456, 469, 35 S. Ct. 896 (59 L. Ed. 1406).

The same principles apply to this case. An order of the Secretary of Agriculture, determining that a rate is unreasonable or discriminatory and awarding reparation, is a quasi judicial order.

The judgment is affirmed.