**UNITED STATES NAV. CO., Inc. v. CUNARD S. S. CO., Limited, et al.**

No. 5.

Circuit Court of Appeals, Second Circuit.

May 18, 1931.

SWAN, Circuit Judge, dissenting.

Rumsey & Morgan, of New York City (Mark W. Maclay and John Tilney Carpenter, both of New York City, of counsel), for appellant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Roscoe H. Hupper and Burton H. White, both of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The agreement set forth in the amended bill of complaint involved a violation of the Sherman Anti-Trust Act, 15 USCA §§ 1–7, 15 (United States v. Pacific & Arctic Co., 228 U. S. 87, 33 S. Ct. 443, 57 L. Ed. 742; Thomsen v. Cayser, 243 U. S. 66, 37 S. Ct. 353, 61 L. Ed. 597, Ann. Cas. 1917D, 322), at least in the absence of approval by the United States Shipping Board pursuant to section 15 of the Shipping Act (46 USCA § 814). That section provides that "all agreements * * * made after the organization of the board shall be lawful only when and as long as approved by the board, and before approval or after disapproval it shall be. unlawful to carry out in whole or in part, directly or indirectly, any such agreement. * * * Every agreement * * * lawful under this section shall be excepted from" the Sherman Act and acts supplementary thereto.

As the amended bill alleges that the agreement declared upon has not been approved by the Shipping Board, the exception of section 15, supra, does not apply. From this the plaintiff reasons that an injunction may be properly sought under section 16 of the Clayton Act (15 USCA § 26), which permits "injunctive relief" to private parties "against threatened loss or damage by a violation of the anti-trust laws."

Prior to the enactment of the Clayton Act in 1914, private parties were not entitled to sue to restrain violations of the anti-trust laws embodied in the Sherman Act, though injunctive remedies were given to the government. Minnesota v. Northern Securities Co., 194 U. S. 48, 24 S. Ct. 598, 48 L. Ed. 870; Paine Lumber Co. v. Neal, 244 U. S. 459, 37 S. Ct. 718, 61 L. Ed. 1256.

The Clayton Act (section 16 [15 USCA § 26]) provided that no person except the United States shall be entitled "to bring suit in equity for injunctive relief against any common carrier subject to the provisions of the Act to regulate commerce * * * in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission." The Supreme Court has held that, while a combination of land carriers to fix rates may be il-

legal under the Anti-Trust Acts and may be prosecuted by the United States, private shippers who claim to be injured must seek their remedies against such a combination under the Interstate Commerce Act (49 USCA § 1 et seq.) (Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075), and cannot even sue at law to recover damages under section 7 of the Sherman Act (15 USCA § 15). Keogh v. C. & N. W. Ry. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183. The court below, per Caffey, J., applied similar reasoning to the combination of water carriers in the case at bar and dismissed the amended bill on the ground that relief must be sought under the Shipping Act.

It is said, however, that the Clayton Act contains no exception, affecting carriers by water, similar to the provision of section 16 of that act (46 USCA § 815), which precludes private parties from bringing suits for injunctive relief against land carriers in respect to matters subject to the regulation of the Interstate Commerce Commission; and it is therefore insisted that the general provisions of the Clayton Act permitting injunctive relief to private parties "against threatened loss or damage by a violation of the antitrust laws" should have unrestricted application to the case at bar.

But, in spite of the provision in the Interstate Commerce Act that nothing contained therein "shall in any way abridge or alter the remedies * * * existing at common law or by statute" and that its provisions "are in addition to such remedies" (49 USCA § 22), the Supreme Court has been increasingly disposed to treat the remedies afforded by that act as exclusive. Private parties have not been permitted to pursue remedies under the Sherman or Clayton Acts in cases where the Interstate Commerce Act has afforded relief. Keogh v. C. & N. W. Ry. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183.

It is said that remedies afforded by the Interstate Commerce Act have been held exclusive only where administrative questions have been involved. But the tendency to extend the requirement of a preliminary inquiry by the Commission is significant.

In the pioneer case of Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, it was held that the right of a shipper to recover a rate alleged to be discriminatory must first be submitted to the Interstate Commerce Commission. Robinson v. Balt. & Ohio R. R., 222 U. S. 506, 32 S. Ct. 114, 56 L. Ed. 288, and Mitchell Coal Company v. Penna. R. R. Co., 230 U. S. 247, 33 S. Ct. 916, 57 L. Ed. 1472; were to the same effect. In Balt. & Ohio R. R. v. Pitcairn Coal Co., 215 U. S. 481, 30 S. Ct. 164, 54 L. Ed. 292, Morrisdale Coal Co. v. Penna. R. R., 230 U. S. 304, 33 S. Ct. 938, 57 L. Ed. 1494, and Midland Valley R. R. v. Barkley, 276 U. S. 482, 48 S. Ct. 342, 72 L. Ed. 664, the question involved was whether a distribution of coal cars to shippers was discriminatory. It was held that the matter involved preliminary action by the Interstate Commerce Commission, in the absence of which the federal courts had no jurisdiction. Similarly in Tex. & Pac. Ry. Co. v. American Tie Co., 234 U. S. 138, 34 S. Ct. 885, 58 L. Ed. 1255, the question whether a tariff established by the Commission covered a certain product was held to require the preliminary determination of the Commission. In Northern Pac. Ry. Co. v. Solum, 247 U. S. 477, 38 S. Ct. 550, 62 L. Ed. 1221, the reasonableness of a practice of routing shipments was held to involve preliminary administrative determination. In Western & Atlantic v. Public Service Comm., 267 U. S. 493, 45 S. Ct. 409, 69 L. Ed. 753, a bill which was filed to enjoin a state commission from enforcing an order directing a railroad to maintain service on an industrial switch track was dismissed because the question was one which must first be presented to the Interstate Commerce Commission. In Board v. Great Northern Ry., 281 U. S. 412, 50 S. Ct. 391, 74 L. Ed. 936, it was held that the question whether intrastate railroad rates ordered by state authority should be set aside as working unreasonable discrimination against interstate commerce must be determined in the first instance by the Interstate Commerce Commission, and a suit to enjoin a state commission from enforcing an order as to such rates was dismissed.

In the following situations suits were allowed without preliminary resort to the Interstate Commerce Commission because pure questions of law were thought to be involved: In Pennsylvania R. R. v. Sonman Coal Co., 242 U. S. 120, 37 S. Ct. 46, 61 L. Ed. 188, the coal company sued to recover damages from the railroad on the ground that the latter had failed to supply a sufficient number of cars and had discriminated against it unjustly. It was found that conditions of traffic were normal and that the railroad had plenty of cars for the coal company if it

chose to supply them. In these circumstances there was no administrative question to be passed upon. The court emphasized the fact that section 22 of the Interstate Commerce Act (49 USCA § 22) preserved such "appropriate common law or statutory remedies" as could be enforced consistently with the purpose of the act, that no administrative question was presented, and held that the claim might therefore be prosecuted without any precedent action by the Commission. In Great Northern Ry. v. Merchants' Elev. Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943, where the question whether a tariff established by the Commission covered a certain product involved no matters of fact as it had in Tex. & Pac. Ry. Co. v. American Tie Co., 234 U. S. 138, 34 S. Ct. 885, 58 L. Ed. 1255, but only a construction of the meaning of the word "lumber" in the tariff, a suit by a shipper to recover alleged overcharges by the railroad was sanctioned without preliminary resort to the Commission. In Tex. & Pac. Ry. v. Gulf, etc., Ry., 270 U. S. 266, 46 S. Ct. 263, 70 L. Ed. 578, a direct judicial remedy was allowed under paragraph 20 of section 402 of the Transportation Act of 1920, 49 USCA § 1 (20). In Turner Lumber Co. v. C., M. & St. Paul Ry., 271 U. S. 259, 46 S. Ct. 530, 70 L. Ed. 934, the question whether the Commission had violated the Constitution in fixing so-called penalties for demurrage of cars was held properly determinable by a court without prior resort to the Commission, since it involved the jurisdiction of that body and its right to proceed at all.

It seems evident that the Supreme Court, after first holding in the Abilene Case, 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, that prior resort to the Commission must be had where uniformity of rates is affected by the decision of a question of fact, has proceeded far beyond the natural limitations of such a doctrine, and has, in general, insisted upon prior resort to the Commission wherever complicated questions of fact will arise and experience in technical matters is required. Thus in Midland Valley R. R. v. Barkley, 276 U. S. 482, 48 S. Ct. 342, 72 L. Ed. 664, the carrier's practice of distributing coal cars was involved. Though the question was not one of discrimination or of rates, but of the reasonableness of the practice, yet prior resort to the Commission was held to be necessary. So in Northern Pac. Ry. v. Solum, 247 U. S. 477, 38 S. Ct. 550, 62 L. Ed. 1221, it was specifically contended that the rule which requires preliminary determination of questions by the Commission applied only to cases where a particular rate was unreasonable or a particular practice was discriminatory, but the court said, at page 483 of 247 U. S., 38 S. Ct. 550, 553: "It applies, likewise, to any practice of the carrier which gives rise to the application of a rate." In Board v. Great Northern Ry. Co., 281 U. S. 412, 50 S. Ct. 391, 393, 74 L. Ed. 936, where a commission of the state of North Dakota had made an order prescribing intrastate class rates and reducing the existing rates about 10 per cent., a suit was brought by the carriers against the state commission to enjoin enforcement of its order pending the determination by the Interstate Commerce Commission of the question whether the intrastate rates would cause unreasonable discrimination against interstate commerce. In discussing the powers of the Interstate Commerce Commission, the court said: "The controlling principle, * * * was derived from a consideration of the nature of the question and of the inquiry and action required for its solution. The inquiry would necessarily relate to technical and intricate matters of fact, and the solution of the question would demand the exercise of sound administrative discretion. The accomplishment of the purpose of Congress could not be had without the comprehensive study of an expert body continuously employed in administrative supervision. Only through the action of such a body could there be secured the uniformity of ruling upon which appropriate protection from unreasonable exactions and unjust discriminations must depend." It was held that the federal court had no authority to enjoin the enforcement of the state order pending the determination by the Interstate Commerce Commission of the question whether the intrastate rates unduly affected interstate commerce. The question was primarily not one of discrimination, for within the state of North Dakota there would have been no discrimination. It was really whether the rates so affected interstate business as to be unreasonable under all the circumstances.

It seems evident under the most recent interpretation of the Interstate Commerce Act that questions of reasonableness and of fact affecting land carriers must first be raised before the Interstate Commerce Commission. The Sherman Act as now construed only prevents unreasonable restraints of trade. Standard Oil Co. v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D,

734; Am. Tob. Co. v. United States, 221 U. S. 106, 31 S. Ct. 632, 55 L. Ed. 663; National Ass'n of Window Glass Mf'rs v. United States, 263 U. S. 403, 44 S. Ct. 148, 68 L. Ed. 358. Therefore, even had the agreement set forth in the present bill related to land carriers, it would have had to be passed upon by the Interstate Commerce Commission before resort to the courts. In Keogh v. C. & N. W. Ry. Co., 260 U. S. 156, 43 S. Ct. 47, 49, 67 L. Ed. 183, it was observed that damages for the exaction of rates which the Commission had found to be illegal because unreasonably high or discriminatory would be recovered in proceedings before the Commission, and that it could not be supposed that Congress had intended to provide the shipper "with an additional remedy under the Anti-Trust Act." In the opinion in the Keogh Case it was further observed that a combination of carriers to fix nondiscriminatory rates might still be illegal under the Anti-Trust Acts and the government might have redress by criminal proceedings under section 3 (15 USCA § 3), by injunction under section 4 (15 USCA § 4) and by forfeiture under section 6 (15 USCA § 6); but, while the approval of the rates by the Commission would not bar proceedings by the government, a private shipper who had lost the benefit of rates which except for the conspiracy he would have enjoyed, could not recover damages under section 7 of the Sherman Act (15 USCA § 15).

The decisions that the Sherman Act can be invoked by the government against combinations involving the fixing of rates by land carriers can therefore have no application to original suits by private parties, whether brought under section 7 of that act or otherwise. Actions at law under section 7 are barred by no statutory proscription such as section 16 of the Clayton Act (15 USCA § 26), which forbids injunctive relief in respect to matters "subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission," but because the remedies given by the Interstate Commerce Act are exclusive. Keogh v. C. & N. W. Ry. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183; Central Stock Yards Co. v. Louisville & N. R. Co. (C. C.) 112 F. 823; Cohen v. Schofield, 299 Pa. 496, 149 A. 710.

The trial judge said in his opinion: "The means alleged to have been employed were unreasonably excessive differentials between contract rates and open or tariff rates, coupled with viciously discriminatory practices in applying the differentials. Shippers, in a variety of ways, were thereby coerced, it is said, to divert general cargo from the line of the plaintiff to the lines of the defendants. Without a scale of unreasonably high tariff rates or unreasonably low contract rates, the differentials could not have existed as a device."

If, as we believe, the foregoing analysis of the charges in the amended bill is correct, the gravamen of the cause of action in the case at bar was the unreasonableness of the agreed rates of carriage, which, had land carriers been concerned, would have been a matter requiring primary resort to the Interstate Commerce Commission.

But a reason, other than the analogy of the rule, starting with the Abilene Case, that administrative questions must first be submitted to the Interstate Commerce Commission, required the decision of the court below. That rule was originated by the Supreme Court, and has been extended in scope in spite of section 22 of the Interstate Commerce Act (49 USCA § 22), prescribing that nothing contained therein should "in any way abridge or alter the remedies * * * existing at common law or by statute, but the provisions of this act are in addition to such remedies." The Shipping Act, on the other hand, contains no clause preserving general legal and equitable remedies, but provides ample remedies of its own. It empowers the Shipping Board under section 15 (46 USCA § 814) to approve such agreements as it shall not find to be "unjustly discriminatory or unfair as between carriers, shippers, exporters, importers, or ports, or between exporters from the United States and their foreign competitors or to operate to the detriment of the commerce of the United States, or to be in violation of this Act. * * *" The act broadly forbids only contracts that are "unfair or unjustly discriminatory" (section 14 [46 USCA § 812]), and the giving of "any undue or unreasonable preference or advantage" (section 16 [46 USCA § 815]). It thus seems evident that Congress has set up a standard for the shipping business quite different from that applicable to trade agreements affecting business on land. Approval under section 15, supra, does not depend on whether a trade agreement fixes rates or restricts competition, but on whether it injures the welfare of the industry. The determination of whether an agreement fixing rates is for the benefit of the industry or is an unreasonable and oppressive burden which cannot be justified requires a special fact finding tribunal having an intimate acquaintance

with the needs and practices of the business and constant experience in resolving the merits of conflicting interests in a vast and complicated industry. We have no doubt that the questions arising in this case should be passed upon by the Shipping Board, and that the Shipping Act created a tribunal adapted to exercise this precise function.

The most important objection to the conclusion of the trial court that the jurisdiction of the Shipping Board is primary and exclusive is due to the provision of section 15 (46 USCA § 814) of the Shipping Act that agreements made after the organization of the Shipping Board "shall be lawful only when and as long as approved by the board, and before approval or after disapproval it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement. * * *" While section 15 excepts from the operation of the Sherman Act, and acts supplementary thereto, agreements "lawful under this section," it excepts none other, and, as the agreement set forth in the amended bill is alleged not to have been approved by the Board, it is ex vi termini unlawful.

It is said that the foregoing clause leaves a private suitor free to seek an injunctive remedy under the Clayton Act so long as the agreement has not been filed and approved. Doubtless the government would have such a right, but it does not follow that the right inheres in private persons. The Shipping Act provides complete remedies for all the alleged wrongs, and, in the absence of investigation by the Shipping Board, it is impossible to say whether there is a substantial grievance. The exception as to "approved" agreements seems to have been inserted in the act in order to make it clear that some agreements may be sanctioned by the Shipping Board which would offend the Anti-Trust Acts, rather than for the purpose of retaining remedies which under the Interstate Commerce Act (49 USCA § 1 et seq.) and the Packers & Stockyards Act (7 USCA § 181 et seq.) have been held to be superseded by remedies afforded by those acts. Keogh v. C. & N. W. Ry. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183; Sullivan v. Union Stockyards Co. (C. C. A.) 26 F. (2d) 60.

Section 15 of the Shipping Act (46 USCA § 814) provides that every carrier by water "shall file immediately with the board a true copy, or, if oral, a true and complete memorandum, of every agreement, with another such carrier * * * to which it may be a party * * * fixing or regulating transportation rates or fares; giving or receiving special rates, accommodations, or other special privileges or advantages; controlling, regulating, preventing, or destroying competition; * * * or in any manner providing for an exclusive, preferential, or cooperative working arrangement. * * *" The Board shall approve such agreements as it does not find "to be unjustly discriminatory or unfair." Section 14 (46 USCA § 812) prohibits agreements to allow "deferred rebate" and likewise prohibits "unfair or unjustly discriminatory" contracts with shippers "based on the volume of freight offered." Section 16 (46 USCA § 815) provides that it shall be unlawful for any common carrier "to make or give any undue or unreasonable preference or advantage to any particular person, locality, or description of traffic in any respect whatsoever, or to subject any particular person, locality, or description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." Section 17 (46 USCA § 816) prohibits carriers by water from demanding any rate that is "unjustly discriminatory" and authorizes the Board to make orders to discontinue charging such rates.

It appears from the foregoing that the failure to secure the approval of such an agreement as is alleged, the granting of deferred rebates, the alleged spreading of false rumors about the business of the plaintiff, and the persuasion of shippers to cancel existing contracts with it, are all forbidden by the Shipping Act, and come either within its express prohibitions or within the general language of section 16 (46 USCA § 815), which makes it unlawful "to subject any particular person * * * to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Section 17 (46 USCA § 816) specifically authorizes the Board to order that a carrier discontinue "any * * * unjustly discriminatory or prejudicial rate." Section 22 (46 USCA § 821) allows "any person" to file with the Board a complaint setting forth "any violation of the Act" by a common carrier by water and asking reparation for the injury, if any, caused thereby. It provides that the Board shall "investigate it in such manner and by such means, and make such order as it deems proper."

The words of section 22 (46 USCA § 821) authorizing the Board upon complaint and investigation to "make such order as it deems proper" and to "direct the payment

* * * of full reparation," and the words of section 17 (46 USCA § 816) authorizing the Board to make an order that the carrier shall discontinue charging any "unjustly discriminatory or prejudicial rate, fare, or charge," afford ample remedies for all the wrongs recited in the amended bill. Section 29 (46 USCA § 828) covers the enforcement of orders of the Board against recalcitrant persons and provides that any party injured by the violation of an order "may apply to a district court having jurisdiction of the parties; and if, after hearing, the court determines that the order was regularly made and duly issued, it shall enforce obedience thereto by a writ of injunction or other proper process, mandatory or otherwise." Section 31 (46 USCA § 830) makes the judicial procedure in regard to orders of the Interstate Commerce Commission applicable to orders of the Shipping Board.

We believe we have shown that, where a tribunal like the Shipping Board has been created with supervisory powers over a business and with peculiar facilities for dealing with complicated questions of administration and economics, the remedies afforded under the act creating it ought to be exhausted before recourse may be had to the courts.

The Shipping Board may determine whether any agreement such as is described in the bill has actually been made, and, if it has, may order it filed and require the parties to cease from acting under it unless and until it is approved. Under section 22 of the act (46 USCA § 821) the Board may award reparation to the plaintiff for any wrongs it has suffered because of practices forbidden by sections 14 and 16 and under section 17 (46 USCA § 816) may require the defendants to discontinue any unjustly discriminatory rates. Proof of the existence and extent of the grievances complained of will require investigations in a special field demanding expert knowledge. The alternative to proceeding before the Board seems appalling. In every case where complaints like the present are made by private persons, it would be necessary for a court to enter upon the trial of an anti-trust suit in order to determine whether the alleged illegal combination and practices exist and at any moment to become substantially ousted of jurisdiction by the filing of the agreement (if shown to have been entered into), with a resultant reference to the Shipping Board of the question as to how far it should be canceled, modified, or approved. It is difficult to suppose that Congress ever intended to give private parties two sets of remedies, under each of which reparation as well as other relief might be had, and still harder to imagine that these remedies might be pursued pari passu. If suits for violations of the Anti-Trust Acts cannot be brought either at law or in equity against land carriers, though the Interstate Commerce Act has in terms preserved judicial remedies, it is hard to see why they may be brought against ocean carriers, where the Shipping Act contains no such reservation and has provided for the approval of agreements which, at least so far as the parties are concerned, may not accord with the requirements of the Anti-Trust Acts.

No doubt, if the allegations in the amended bill are found to be correct, the Anti-Trust Acts have been violated, but the Shipping Act has been violated as well. Though the remedies under the Anti-Trust Acts are thought by plaintiff's counsel to apply, it does not follow that they do, where the frame of the Shipping Act indicates another procedure. We find that all the wrongs alleged are violations of the Shipping Act, and hold that the plaintiff must seek its remedy thereunder.

It is said that the present suit ought to lie because the Shipping Board has already held in the proceeding of Eden Mining Co. v. Bluefields Fruit & Steamship Co., 1 U. S. S. B. 41, that exclusive contracts similar to those set forth in the amended bill are unlawful. It is true that certain decisions under the Interstate Commerce Act to some extent support this reasoning. Mitchell Coal Co. v. Penna. R. R. Co., 230 U. S. 247, 33 S. Ct. 916, 57 L. Ed. 1472; National Pole Co. v. Chicago & N. W. Ry. Co. (C. C. A.) 211 F. 65. But the Interstate Commerce Act preserved legal and equitable remedies, whereas the Shipping Act contains no such reservations, and prior resort should be had to it as to all matters within its jurisdiction. Moreover, without having a burdensome trial, it is impossible to know whether the situations in the Eden proceeding and the present suit are parallel. Certainly they are prima facie much less comparable than cases relating to rates of transportation for identical services, where in one of them the rate-making function has already been exercised, as in Mitchell Coal Co. v. Penna. R. R., supra. The difficulty with treating a single decision of the Shipping Board as a binding precedent, where it deals with a rate agreement involving complicated and difficult questions of law and fact, may be appreciated by exam-

ining the opinion of Judge Lacombe in United States v. Prince Line (D. C.) 220 F. 230, in which the three other Circuit Judges of this circuit concurred. It held that an extensive combination of steamship companies, which had agreed upon rates, restricted competition, and even granted rebates, was not so far repugnant to the "rule of reason" that it violated the Sherman Act. Irrespective of the legal merits of that decision as a precedent for the construction of the Sherman Act, it certainly indicates how slight a basis the interpretation of a single trade agreement furnishes for settling the law relating to other combinations. Especially is this so since the creation of the Shipping Board and the delegation to it of broad powers to approve trade agreements which will benefit the shipping business as a whole.

It may possibly be suggested that the facts set forth in the amended bill have been admitted on demurrer and that consequently no administrative questions are left for determination by the Shipping Board. But the Shipping Act, as we have already said, does not provide that nothing· contained therein "shall in any way abridge or alter the remedies * * * existing at common law or by statute," but, by its own terms, empowers the Board to "make such order as it deems proper" to remedy private wrongs and also empowers any injured person to apply to the courts for enforcement of orders of the Board which are not obeyed. Not only, therefore, may the Board consider and determine questions of law as well as of fact affecting matters within its jurisdiction, but admissions taken to be made because of the motion to dismiss, which was founded primarily on the objection that the plaintiff had no right to apply for an injunction in advance of resort to the Shipping Board, cannot justify the continuance of the present suit. It is notorious that such charges as are made here are not disposed of by admissions, but in the end result in protracted trials and in the resolution of complicated problems and disputed questions of fact and economics. A choice must be made between the two possible remedies of a suit under the Anti-Trust Acts and a proceeding before the Shipping Board. Every practical consideration favors resort to a tribunal specially equipped and experienced to deal with such matters. The Shipping Board seems to have been designed to aid the courts and to relieve them by its investigation and preliminary determination. We think that every reason of policy and convenience should prompt the courts to

"take arms against a sea of troubles" by requiring resort to the Shipping Board in situations like the present. That tribunal has exclusive jurisdiction here, because of the nature of the questions involved and the broad powers given to it under the act.

It is argued that private suits for violation of the anti-trust statutes ought to lie by the analogy of the decisions under the Federal Trade Commission Act (15 USCA §§ 41-51). But that act not only in terms preserves remedies under the Anti-Trust Acts, as the Shipping Act does not, but, under the ruling of the Supreme Court, is held not to afford private persons an administrative remedy. The analogy therefore fails. Federal Trade Comm. v. Klesner, 280 U. S. 19, 50 S. Ct. 1, 74 L. Ed. 138, 68 A. L. R. 838.

It seems clear that any disposition of this suit other than that by the court below would not only add enormously to judicial labors, but would hopelessly complicate the situation we have before us by applying two separate and in some respects inconsistent remedies to transactions already difficult enough in themselves. We hold that the analogy of the decisions under the Interstate Commerce Act is complete, and that the broad powers given by the Shipping Act furnish added reasons for denying injunctive relief.

The decree is affirmed.

SWAN, Circuit Judge (dissenting).

I am not convinced that the Shipping Act (46 USCA § 801 et seq.) should be construed to oust the courts of jurisdiction to issue an injunction under the circumstances here disclosed. The agreement under which the carriers acted and are threatening to act to plaintiff's prejudice has not been filed with and approved by the Board. Hence the acts done under it are forbidden by the Shipping Act as well as by the Sherman Anti-Trust Act (15 USCA §§ 1-7, 15). Concededly, on the facts alleged, the plaintiff should have an injunction unless this remedy has been taken away from him because similar relief may be obtained from the Shipping Board. The act does not expressly repeal existing rights and remedies, and repeals by implication are not favored. An injunction forbidding the carriers from acting under the agreement unless and until they shall file it and obtain the Board's approval of it would in no way hamper the Board's administrative functions; indeed, under the allegations of the complaint (admitted by the demurrer), the Board could not legally ap-

prove the agreement, nor can I see that such an injunction would be inconsistent with the rights and remedies given the plaintiff by the Shipping Act. The attempt to apply the principle that repeals by implication are not favored leads me to the belief that the similar injunctive relief which I have assumed the plaintiff might obtain from the Board, though the language of the act does not seem to be so clear as to put the matter entirely beyond question, should be considered an additional remedy, not a remedy in substitution for that which the plaintiff might seek in the courts. While the construction placed by the Supreme Court on the Act to Regulate Commerce in such cases as Keogh v. C. & N. W. Ry. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183, and Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, tends to support the view taken by my colleagues, I do not regard the decisions as controlling of the present problem. In the Keogh Case the rates complained of as violating plaintiff's rights had been approved by the Interstate Commerce Commission, and in the Abilene Case the tariff schedule had been duly filed and published and not found unreasonable by the Commission. In the case at bar, however, the agreement complained of has not been, and cannot legally be, approved by the Shipping Board. I think the decree should be reversed.